UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | ) | |
| | ) | No. 19 CR 532 |
| v. | ) | |
| | ) | Judge Sharon Johnson Coleman |
| ANDREW ANANIA | ) | |

<u>MOTION TO SUPPRESS</u>

Andrew Anania, by the Federal Defender Program and its attorney Santino Coleman, respectfully submits this motion to suppress and asks that the Court enter an order precluding the government from introducing into evidence (1) any firearms recovered as a result of Mr. Anania's seizure and arrest, and (2) prohibit the admission of any statements made by Mr. Anania following his seizure and arrest. In support of this motion Mr. Anania states the following:

**I.    Relevant Facts**

On the evening of February 15, 2019, Mr. Anania was walking alone to a friend's house in Little Village, a neighborhood on the West Side of Chicago. Because of the frigid temperatures that evening, Mr. Anania wore a coat, a face mask over his nose and mouth, and a beanie on his head. As Mr. Anania was walking, he was approached by Chicago Police Department ("CPD") officers traveling in an unmarked vehicle.

According to the CPD incident and arrest reports, the officers exited their vehicle, announced themselves, and were planning to arrest Mr. Anania for an

1

outstanding warrant when he fled. The police reports further claim that as Mr. Anania was running, he removed a firearm from his waistband. The officers apprehended Mr. Anania in a gangway, as shown on Body Worn Camera ("BWC") footage.

Following a search of the area, according to the police reports, officers located a firearm near the area where Mr. Anania was apprehended. CPD Officer Jaime Acosta claimed that it was the same firearm he saw in Mr. Anania's possession. CPD officers then transported Mr. Anania to the 10th District police station, where he was video recorded making a statement regarding the incident.

Mr. Anania contends that he did not remove a firearm from his waistband. Moreover, when the officers initially approached Mr. Anania, they did not know his identity (nor that he had an outstanding warrant) given the limited visibility at night, and the face mask and beanie covering his face and head. The varying accounts and details of what transpired warrant an evidentiary hearing. Mr. Anania was subjected to an unlawful seizure and arrest, and thus the firearm and any statements derived from his unlawful detention and arrest should be suppressed from evidence.

## II.    Officers Lacked Reasonable Suspicion

It is well-settled that the Fourth Amendment's prohibition on "unreasonable searches and seizures" extends to "brief investigatory stops of persons or vehicles that fall short of traditional arrest." *United States v. Arvizu,* 534 U.S. 266, 273 (2002); *Terry v. Ohio,* 392 U.S. 1, 16 (1968). In other words, the protections of the Fourth

Amendment are invoked at the moment when a suspect is "seized" or stopped by the police, even when that seizure falls short of an arrest. *Brendlin v. California,* 551 U.S. 249, 263 (2007).

The test for determining the point at which a police encounter ripens into an investigative detention or seizure involves "taking into account all of the circumstances surrounding the encounter," and asking whether the "police conduct would have communicated to a reasonable person that he was not at liberty to ignore the police presence and go about his business." *Kaupp v. Texas*, 538 U.S. 626, 629 (2003); *United States v. Mendenhall*, 446 U.S. 544, 554 (1980) (person is "seized" within meaning of Fourth Amendment when, in view of all the circumstances, a "reasonable person would have believed that he was not free to leave").

Law enforcement must have a sufficient evidentiary basis to effectuate such a stop, even though the "investigative detention" is not, strictly speaking, an arrest. Under *Terry*, "a police officer may in appropriate circumstances and in an appropriate manner approach a person for purposes of investigating possible criminal behavior even though there is no probable cause to make an arrest." 392 U.S. at 22. As pertinent here, *Terry*'s actual holding was "where a police officer observes unusual conduct which leads him reasonably to conclude that criminal activity may be afoot ..." a brief stop is permissible. *Id.* at 30. But, such a stop must be "based on objective facts" that form the foundation of the officer's conclusion that criminal activity must be taking place. *Brown v. Texas*, 443 U.S. 47, 49-52 (1979) (finding violation of Fourth

Amendment when officers observed two men standing close to one another in an alley located in a neighborhood known for drug trafficking; "[w]hen the officers detained appellant for the purpose of requiring him to identify himself, they performed a seizure of his person subject to the requirements of the Fourth Amendment.").

As with almost all Fourth Amendment analysis, the Court is called upon to engage in a heavily fact dependent inquiry. What the officers and suspects say and do, how they appear, the circumstances of the officer's approach to the suspect, and other details related to when and where the stop take place, all factor into the Court's analysis of whether an investigatory stop occurred and whether the officer had the requisite objective reasonable suspicion to effectuate the stop. Under the circumstances of this case, Mr. Anania was subjected to an investigatory (*Terry*) stop when the officers chased Mr. Anania and apprehended him in the gangway. The officers lacked the reasonable suspicion necessary to effectuate such a stop.

First, the reports indicate that the officers approached Mr. Anania because they recognized him and knew he had an outstanding warrant. But this is implausible due to the limited visibility that night and because Mr. Anania's face and head were covered with a face mask and beanie. The officers did not know who he was and had no basis to suspect Mr. Anania, who was merely walking along the sidewalk, was engaged in criminal activity. Mr. Anania's decision to flee does not amount to reasonable suspicion or probable cause to detain and arrest him. Second, this Court should not credit the officer's unsubstantiated claims that Mr. Anania

4

removed a firearm from his waistband. The officers' attempts to provide justifications for detaining Mr. Anania that do not exist flout Mr. Anania's constitutional rights. The seizure and arrest of Mr. Anania violates his Fourth amendment rights and any evidence obtained as a result of the stop should be suppressed.

### III. Conclusion

For the reasons stated above, Mr. Anania requests the Court enter an order precluding the government from introducing into evidence (1) any firearms recovered as a result of Mr. Anania's seizure and arrest, and (2) prohibit the admission of any statements made by Mr. Anania, which derive from his unlawful seizure and arrest. Given the disputed factual issues, Mr. Anania requests that this Court hold an evidentiary hearing on the matter. Mr. Anania also respectfully requests leave to file additional points of law, memoranda, or other materials upon receipt of additional information and/or following an evidentiary hearing.

Respectfully submitted,

FEDERAL DEFENDER PROGRAM
John F. Murphy
Executive Director

By: s/ Santino Coleman
    Santino Coleman

SANTINO COLEMAN
FEDERAL DEFENDER PROGRAM
55 E. Monroe St., Suite 2800
Chicago, IL 60603
(312) 621-8341

**CERTIFICATE OF SERVICE**

The undersigned, <u>Santino Coleman</u>, an attorney with the Federal Defender Program hereby certifies that in accordance with FED.R.CRIM. P. 49, FED. R. CIV. P5, LR5.5, and the General Order on Electronic Case Filing (ECF), the following document(s):

<u>MOTION TO SUPPRESS</u>

was served pursuant to the district court's ECF system as to ECF filings, if any, and were sent by first-class mail/hand delivery on <u>July 21, 2021</u>, to counsel/parties that are non-ECF filers.

FEDERAL DEFENDER PROGRAM
John F. Murphy
Executive Director

By: <u>*s/ Santino Coleman*</u>
    Santino Coleman

SANTINO COLEMAN
Federal Defender Program
55 E. Monroe, Suite 2800
Chicago, Illinois 60603
(312) 621-8341